You're welcome. Thank you very much, may it please the court. The district court's construction in this patent case of the term ranking or the ranking terms that appear in the patent was placing the method signatures in an ordered manner relevant to one another. This construction was erroneous because it violates the rule in Phillips that claims are to be construed in the context of the entire patent. And in particular, the contextual rule that was violated here was the doctrine of claim differentiation. If you look at the language of the claim itself, you want us to say that the ranking can be just a ranking between suitable and unsuitable, right? That's correct, assigned to a particular claim. But that's exactly what the comparing step does. The comparing step compares the methods and determines if they're suitable or not. It puts the suitable ones in one category and the unsuitables in another. So we've already done that. No, that's absolutely not correct, Your Honor, because there are two problems with that statement. That's the argument that's made by the other side. The first problem is if you look at the language of the claim. In fact, I wanted to look at the language of the claims we gave, Your Honor. The comparing step does not say comparing the signatures. This is an important distinction. What you're ranking in the ranking step is the signatures. What you're doing in the comparing step is comparing the data types of input parameters of each method. Each method represented by the signatures to data types of input parameters passed by the requested method implication to determine suitability. So what you're doing there, Your Honor, is you're making a determination of suitability. Then what you're doing in the ranking step is you're placing the signatures in a particular class. And with regard to that, this is really where there were three aspects of the district court's opinion that I think explain the error here. And this is the one that Judge Davis actually spent the most time talking about, which was this notion that you raised. I'm still trying to figure out why you haven't read the ranking claim completely out of it, the ranking element completely out of the claim. Oh, we haven't read it out of the claim. Because you've already got a suitability act to be compared, right? When I finish the comparing step, I have beside every signature which represents every method, I've got a little S or an un-S, right? Or some comparable designation. That's exactly the point of the ranking step. The comparing step is the actual comparison. And remember, let me step back here for a second. But the comparison step is to determine suitability. That's right. That's a yes or no, is it not? Well, it could be a yes or no. It could be something that's more numerical or ordinal like the district court. In the ranking step, I mean, it seems to me that you're just trying to make the comparing step fall out of the claim. The ranking step then says ranking the method signatures based on the determined past tense suitability. But you already determined suitability in the previous step. And now you're going to rank them based on the two hands that they happen to be in. The point is, you're right, with the ranking step, is that the ranking step could be pass-fail. It could be 1 through 25 like the AP basketball rankings. You already did pass-fail in the previous step. So the ranking step would then be completely redundant if we were to interpret it the way you want it to be. No, because the way I interpret, the way we interpret the ranking step includes a pass-fail. It doesn't limit it to pass-fail. If it were limited to pass-fail, then I guess I would agree with you that we're making it redundant. But that ranking is certainly not just going to be a suitability because we've already done that, right? Maybe you've got some other criteria. I couldn't find it in the specification. But it's not going to be just suitability because that's already been done, right? Well, I don't agree with that because I think the difference is that the comparing is the calculation and the ranking is the placement. And to go back to your question, the placement. Okay, so how are you placing them based on what? Well, you can place them in a lot of different ways. You could do it. How are you proposing us to interpret the placement? We have proposed the construction of the term ranking as to assign to a particular class. That is a broad term, the term fitness ranking. Is the class you're proposing suitability or unsuitability? It is not only that, but it can include that. Well, that's the only one that's relevant here, isn't it? That's the only one that gets you to an internship. Well, counsel, in other words, prosecution history lends support. And you clearly do understand that we look to the prosecution history when interpreting rankings. And it seems to me that prosecution history supports the colleague's position when it says in multiple places, the ranking referred to in Step 3 of Plan 1 is the ranking of the method signatures in order of suitability. That's right. You could have – imagine that you're ranking – Ranking them in order. Exactly. Imagine that you have two signatures. And one is suitable and one is not. Now, that is a ranking. That is a ranking under the ordinary meaning of the term. The problem with the Applebee's argument is that it gives the term fitness ranking in claim 2, dependent claim 2, no independent meaning. But the problem with your argument is it gives one of the limitations in claim 1, that independent meaning. We've already stated repeatedly that claim differentiation is not a dispositive principle. And, in fact, in current construction, it seems like there aren't that many dispositive principles. But, nonetheless, we certainly say claim differentiation, if there is one that is more secondary than others, is the one. You prosecute sometimes? No, I don't. You don't? Okay. Well, it seems to me that when people prosecute, they sometimes like to write claims in a lot of different ways, but they end up all meaning the same thing. They just want to cover their bases. They want to make sure that they've covered their bases. And I think that's part of the reason that we recognize that this is something that is frequently done, that we have relegated claim differentiation to a secondary candidate of claim construction. It's not something we don't look at, but when it conflicts with something else, it's pretty strongly like this case. Well, again, I need to take you back to the language, Judge Moore, of the comparing step. What is happening in the comparing step? You'll remember that in column, I believe it's column 3 of the package, there's an example of a signature. And we threw it out in our brief, I believe, at page 7. And if you look at that particular signature, it has three different data types. So what's going on in the comparing step here is that you're comparing the first data type. And then you may have a ranking that's going on after that data type. It may be suitable, unsuitable. It may be 1, 2, 3, 4, 5. It may be any other way of understanding of an assignment to a particular class. All we're saying about ranking is that it includes Judge Rader. It includes suitable and unsuitable. Not only is the specification that the best evidence that the ranking can be based solely on the suitable or unsuitable class. There are a couple of places, Your Honor. If you look at page 26 of the appendix, which is column 2, lines 18 through 25, you'll see the terms. Based on the ranking, one of the method signatures is selected unless no suitable method is found, in which case an error condition is raised. Now that's one. Now another one can be found in column 11, which is in one of the claims, where it talks about in the device claim, the command interpreter ranks the method signatures based on suitability of data types of input parameters. So the ranking can be based on suitability. That's exactly right. And that's the difference. Of course, the language of the claim tells us that. Right. That it's based on suitability. The question is whether the ranking is only suitability or if it is some classification of superior suitability. And that's what fitness ranking is, Your Honor. The point is that ranking is a broader term. And with all due respect to Judge Moore, claim differentiation is at its peak. The legal Florsheim case that we cited in our brief is at its peak when you are reading a dependent claim and an independent claim to have code equal scope. That is exactly what's happening here. And one other thing, Judge Brewer, to answer your question. There is a way to distinguish the parent claim from the independent claim because there are some small, nuanced distinctions that can be drawn between ranking and fitness ranking. Your adversary points that out in your brief. Our adversary says that a fitness ranking is an absolute value. The district court didn't explain why there was a difference at all. So that was an unelaborated conclusion. My adversary, with all due respect, says that a fitness ranking is an absolute value. It's something like a 72 on the bar exam. It's not that. That's something more like a preference value than it is called out of Claim 3. The problem is that you're arguing an interpretation, sort of an after-the-fact interpretation of a document that if you read through the entire patent and the prosecution history, gives you a totally different sense of what this is all about and what this ranking really means. And it's very hard, if you read the entire patent specification and the prosecution history, to come away with the nuanced interpretation that you're arguing, particularly when to do so seemingly eliminates the ranking step from the claim. Well, again, Judge Lynn, I think I have explained to you why we're not eliminating either the ranking or the comparing step to the claim. Judge Regan, I have one other citation for you from the patent. Please give me that, and then let me follow up on what you just said. Sure. In column 6, lines 18 to 23. 18 to 23. Right. You'll see. The language is, after calculating fitness rankings for each potential signature, signature selector 112, which is the apparatus that does the selecting, and it could be any sort of selection, selects the signature having the highest ranking. Now, that's talking about fitness ranking. Okay? That's very important to understand. That's where you're talking about fitness ranking. And then it says, unless all of the signatures have been rejected as being unsuitable. And, Judge Lynn, this follows up on your comment to me earlier, which is, that's not an absolute value in any way, shape, or form. That's what my opponent says the fitness ranking is. That's not an absolute value. So, in summary, Your Honor, and I don't want to leave Judge Rader's question that you wanted to ask behind, but I just want to make sure that, in summary, our argument is not that ranking means suitable or unsuitable. Our argument is that ranking includes a binary choice of suitable or unsuitable. Are you familiar with the athletic alternatives case? In general, yes, but with regard to what aspect? Well, it was written by Chief Judge Michel, and it's an interesting case because it says, you know, I'll tell you, I don't think that their construction is unreasonable. But I, likewise, don't think their construction is unreasonable. And the athletic alternatives case says, when you're reading a patent, and there's a broader construction that's being argued by the patentee, a narrow construction argued by the infringer, and you're really left, after reading the entire patent, the prosecution history, with no clear picture of which of the two ought to prevail, and you adopt the narrower one. On what basis? Because it's the patentee's obligation, according to the athletic alternatives case, to make it clear. And I think, Your Honor, that not only the portions of the specification that I pointed to, but in addition, the fundamental difference between claim one and claim two, the first two claims drawn out of the patent, demonstrate that the term ranking, which, if the construction was urged against us in this case, was driven by the way that they redesigned their software to avoid, or they looked to avoid infringement. And you'll see that in their tutorial, A20 by 50 to 51. That's why this matters. That's where the rubber meets the road, Judge Reader. But I don't, again, you had a follow-up question for me. I don't know if I've answered Judge Moore's question. I think the answer is this patent is clearer than the athletic alternatives hypothetical that you've raised. It's not hypothetical. No, no, no. But I don't remember, as I stand here, whether that was the actual holding of the case, whether that was the weight of the structure. It's a pretty significant structure. I didn't mention anything of that nature in Phillips when we came back to claim the structure. I think that's right. Bob, it doesn't make much sense anyway, does it? I'm going to take on judgment that she joked with Michelle. No, no. I'm just talking about the en banc case in Phillips. Right. And, again, we're relying so much on context in claim differentiation. But I'm trying to find in context here how we would perceive suitability in the comparing step to be different from the suitability in the ranking step. To give you one example of how you might perceive it, the comparing step gives you the data, the information, whatever it is that you need to determine suitability. The ranking step then takes that data and does some sort of sorting of the signatures. And the sorting, our point is our sorting can be suitable, unsuitable. It can be pass, fail. It can be the top 25. Our construction is true to the ordinary understanding of the term ranking, unlimited by Phillips. Theirs violates the context rules of the doctrines of claim differentiation. And I've run past my time here. We're going to restore your five minutes. And if you give Mr. Watkins an additional five minutes, should he need to use it. So this clock should read 20 minutes. Thank you. Unless the court has anything else for me, I'll return. Yes, and you will have five minutes with your brother. Stand here, Mr. Watkins. If you need to use it, you have some extra time. Thank you. People are signing for you now. Thank you. I was, as a simple Texas lawyer appearing in front of an intellectual property court in a city in California, I had that feeling of a fish out of water. Thank you for having an animal tracking case so I would feel it. Well, we're not tracking any of our fish. I think this is a question about whether or not a patent holder can change the way they've used a term throughout the whole prosecution history, the words that are in the claims and in the specifications, by using construction terms or construction rules in order to change it from the way they've been using it. I think it's clear that throughout the way that this particular patent holder used the word ranking in order to get their patent was exactly the use of the word ranking that the judge found in the trial courts to what it means, and that is to put it in an order. Isn't the most difficult aspect of your case trying to explain the distinctions between the independent claim and this dependent claim, the fitness ranking? Yes, sir. Why don't you tell us your position on that? Well, the question that occurred to me is, isn't it possible for us to infringe the independent claim without a fitness ranking? In other words, if it's a dependent claim, shouldn't there be other ways to infringe? Fitness ranking is one way to measure the ranking, and therefore there must be a way to infringe it that doesn't include that fitness ranking. And so I tried to figure out what that might be, and I was having a hard time coming up with it, and I think that's because, as the judge has already pointed out, sometimes you have the same thing recited in dependent claims in order to just try to cover all the bases. But the way it made most sense to me was ranking is to put them in order of suitability, and suitability has already taken place, and then you rank them related to each other. Fitness ranking in the dependent claim, the only way I could think of it was the way you measure the gaps. In other words, you can have a number one and then you can have a number two. Number two may be real close to number one, or number two may be a long way. There may be a larger difference between the spacing between the terms that are ranked. Isn't the task before us, though, not to necessarily think this out and try to think it through and figure out what makes sense, but for us to review the intrinsic record primarily, the specification and the prosecution history to determine what that tells us it should be? Yes, and I agree 100%. Why don't you direct us, then, to the specification and the prosecution history that sheds light on this? I provided a video, a demonstrable, which I provided on the other side, and may I have permission to add it to the clip? Any objection? No objection, Your Honor. You may hand it over. The first page of the demonstrable is simply a tip by me to extract from the terms the four steps that are outlined in the independent claim. I always say that these things aren't semi-fair extractions because I think it's hard for any of us to really do it exactly, but I think that sets out the four steps, and I don't think there's any doubt about the number one being the first one, and it would have to happen first. I don't think there's any doubt about number two, to determine suitability, has to happen second, and then you rank a method signature based on the determined past tense suitability, and then you select one according to the rank. Mr. Cassandra argues that the comparing step and the ranking step are really a little different because comparing says comparing the data types, and the ranking step says ranking the method signatures. Based on the determined suitability. And so that distinction doesn't seem to me to make any difference in terms of how they're ordered. I don't know how you have to go through the steps to get from step two to step three and step four. The distinction that counsel makes simply doesn't change the order of these things. It may change the way you look at it, but it doesn't change the order. But what I really understand his argument to be is that ranking is not limited. He's not standing up there saying ranking being suitable or unsuitable because I think that even he recognizes that four wouldn't fit in this claim, but that ranking could certainly include that. He's not saying that it includes only that, but that ranking, and the normal way you might use this claim is you might rank one, two, three, four, five, six, but the claim is also broad enough to encapsulate what if there are only two method signatures that are being considered. There necessarily is sort of one goes here, one goes there. I mean, that's ranking and comparing are going to end up being virtually identical if you only have two. And that is the argument to use the rule of construction and don't exclude the preferred embodiment from interpreting them, and then they have a two method signature set of ranking in order, and they say that our system won't work, but it will. The second page of this is the listing from the patent specifications, the prosecution history, and from the claims themselves that I think shows the question that Judge Lynn, you asked me about showing more in the specifications than it said in the patent. Let me go back. I'll let you do that, I promise, but let me make one comment. I found it very frustrating that you all included almost none of the prosecution history in the appendix. In fact, you didn't even include all of what I would have thought was relevant or interesting or needed to see, and I've made this speech lots of times at lots of places, but it's not getting through to people who are actually litigating the cases in front of us, but I really would like to see the prosecution history when you're arguing it especially, and not just the excerpts, the little, you know, one sentence that you pull out of context, but the more substantial need of it. That's just a comment. Well, I stand here accurately accused, and I'd like to move to supplement. There's three pages at the end of the appendix by appellant. Starting at page A386, there are three additional pages that I would like to supplement from the file record, A387 through A381, because there's a quote on those pages, and I didn't catch the fact that they were not in the appendix, and I apologize. I have it cited by the lower court. Yes, and put it in your memory. And when I started making up the chart, the original chart that I gave you had that particular language in it. When I discovered that it wasn't in the record, I took it out. But I would like permission to, because the language, the court has already quoted, the ranking referred to in step three is the ranking of the method signature in order of suitability for handling the input parameters from the array-based computer environment. That was what the appellant used to get around the prior art by talking about a ranking that is in order, and that's the way they used it. I don't think they can now come in and tell us, but that's not what it means in the claim, because that's the way they differentiated the prior art. And if the court's permission prior, they are going to be able to submit those pages to the court to supplement the record if it's all right with the court. Now, let me talk about claim differentiation and exclusion of the preferred body. We'll go back to that because we were talking about two. There's nothing wrong with determining the way we determine ranking if you have just two. It can be one and two. They can be an equal value. That still doesn't mean they should not be ranked in order of each other, and it doesn't exclude the possibility of a tie. Those of us that live in brief football rankings in the state of Texas are used to having a tie and trying to figure out how to rank between two teams that have the same sort of thing. And so the concept of the preferred embodiment is not excluded by the way we want the term interpreted, which means as a rule of construction, in order to alter what I think is the clear meaning of the independent claim, preferred embodiment simply doesn't do anything to exclude that. What about the rule of construction which says we ought to take care of trying to include within the claim differentiation? As I've already indicated, fitness ranking is one method of ranking. It's not the only method of ranking. The dependent claim, which includes fitness ranking, says, you know, the ranking that took place in claim one is done now by a fitness ranking. That doesn't mean that our order, having an order relevant to one another, would exclude that dependent claim's fitness ranking process to determine which of the ones within the order are closer to each other, which of them might be preferable because they're very, very near to each other or because you think that one of them would be better. That fitness ranking is part of a dependent claim, which would indicate there are other ways to rank other than fitness ranking. Now, if you think that fitness ranking encompasses everything in claim one, then claim differentiation is not our problem. Claim differentiation is the appellate's problem. If claim two, the dependent claim, is as broad as claim one, then there's something wrong with the fact that Padden got granted on that basis. That being the case, then, we believe that the proper interpretation of fitness ranking is it's a subset of the way that you might rank. It doesn't change the order that is apparent in claim one of how you do it, and it doesn't mean that after you've already determined suitability. And let me say, Judge, the fact that they're not talking about two classes, suitable and unsuitable, is certainly not clear from the briefing. The argument made here this morning, I suggest to you, is different from when they argued it in the briefing, in which they are talking about ranking means to determine whether it's suitable or unsuitable, and as you've already indicated, that's inconsistent with step three, as it shows up in the patent. The position of the appellee in this case, then, is simply this. The judge got it right. The judge got it according to the ordinary meaning and the order that it's there. It says the word ranking after suitability has already been determined. We don't exclude the preferred environment, and it doesn't bother us in terms of the idea of claim differentiation. It doesn't mean that that system is wrong or that the other is wrong. That being the case, we can say that the trial court got it right, and we ask that you approve. Where did you, how did you define the understanding of one of ordinary skill in the art? That's a very difficult question because I'm not sure what the art is in this case in terms of determining what the word ranking means. And I don't think that the term ranking is so far outside of ordinary meaning that one skill in the art would look at it any differently than any play person would look at it. I don't think ranking in the terms as it's used in claim one is a special term. I suggest to the court that however... Is the relationship between fitness and ranking something that is unique in this art field? But if you don't have to do it, you don't have to do it. Did you at any point inquire of people, artisans in this field, how they would read the claim? Is that part of the record? No. The answer to yes I did is no it's not in the record. I've got four or five... There were no experts to testify on this. That's correct. Were there any underlying fact issues? Trick question. Yeah. It's quite a stretch, right? Right. It was a Markman hearing. And I don't believe there was no live testimony of Markman. I hope I remembered that right. So were there depositions of people of skill in the art? Yes. I believe that the appellate had... Since we scream over and over again that the only way to construe terms is if one text is understood by one of skill in the art, why wouldn't that be part of your argument? Because there has to be a point where a word has had so much common understanding and people still know the art. I speak to district judges on a regular basis and I get universal applause on one line when I say there's no such thing as plain and ordinary meaning. They unanimously agree with me. It always depends on context. And the context always requires you to present to us the skill in the art, which is the context. So I'm very puzzled that I didn't find, from either side, anything that gave me a firm foundation in the art. Well, Your Honor, now we're into whether or not I'm a prescriptive or a prescriptive linguist. Prescriptive... No, I'm just telling you the law that we tell you you have to follow and that says over and over again, give us the context and the vantage point of what is skill in the art. But you say over and over again that we use the common, ordinary meaning of the word unless there is a special meaning in the art. And got it. And Frankie, I suggest to you, seriously suggest it. It's not one of those things that it takes an expert to tell you what it means. That it means the same thing to the person in the street. If it was so clear, we wouldn't be here, would we? If everybody knew what ranking meant, and everybody knew what fitness meant, and it was absolutely clear without any contest, why is Mr. Dastanius telling me something different than you? It's his job, Judge. Yeah, well, it's your job to help me by giving me the context from the vantage point of what is skill in the art. And what is the art, Judge? That's your job to tell me. That's absolutely right. And it looks to me like this is the computer science art of some kind, and you need to have some kind of basis to tell me what the technology is. Maybe if you had an expert testify, we can find the facts. That's certainly true, Judge. I don't know what to say, Judge, because I looked hard at trying to figure out is there a special meaning in any art that is different from the ordinary meaning? And I don't think there isn't. I think you can construe one. So if I agree with his ordinary meaning, who loses? No, I don't think he says that that's the ordinary meaning. I think he's trying to say we've got an expert who we can put on the stand and we'll testify that there's something special. And if that special meaning is absolutely different from the way that that prosecutor used it in all of his history, he doesn't get to use it, Judge. And our lack of having an expert is not even relevant to that issue. If he used it in the way we mean it, obviously, in the prosecution history, in the specifications, and in the claims, don't we have a right to rely on the way they used it and not let them bring in an expert to try to change the meaning after it's all over? Because there's nothing in the record that lets them put any kind of special meaning. They can be their own lexicographer, but they don't have to be, and they weren't in this case. So then the question is, is there some reason to let them change the way they use the term after it gets patent issued and after it shows up in the claim? So, as I understand your answer to Judge Rader, it's that dictionaries might list lots of different claim meanings, but when you look at the spec in the prosecution history, they all point to only one of them. That's right. And I don't think we can get to the point that you're raising, Judge, and I understand the frustration I have in every patent case of trying to draw that line, but I don't think we can get to that issue in this case. Because if they used it, obviously, the way we want it construed, they don't get to use an expert to change it after the patent issues. I could beat a dead horse more, but I don't think I would. Thank you, Mr. Watkins. Mr. Prestonius, you have about five minutes remaining. Thank you, Your Honor. I'll try to be brief anyway. I'll make about four points here. First of all, with regard to ordinary meaning. Do you mean ranking and fitness the same way? No. What's the difference? Mr. Watkins, in his brief, says that fitness ranking is an absolute numerical value or an absolute value of some sort. And he uses that bar exam hypothetical where 100 on the spot there is a good fitness ranking, but a 72 isn't a good fitness ranking. And our point is that these— Yes, Mr. Watkins was trying to tell us fitness was the difference between the two. Is that anywhere in the specification? The fitness ranking is defined and agreed by the parties. In the Markman hearing, they had proposed a different— Did anyone of skill in the art give us any reading on what fitness means? There were depositions in the case, but as I stand here, I'm racking my brain from my recollection of the record. I don't recall that. I don't believe that to be the case, but I wouldn't swear to it 100%. Where would I find in the record anything that substantiates or contradicts Mr. Watkins' fitness means, the gap between the rankings? You don't have to go any farther than the text of Claim 2, Judge Rayner. Claim 2 says, wherein ranking the method's signatures comprises calculating a fitness ranking for each signature, the fitness ranking representative of a level of suitability of the data types of the input parameters of the method represented by the signature. That's the definition. That's what both parties agreed to at the trial court. In the brief that they presented to this court, they backed away from that and made a different definition so that they could try to come up with a distinction between fitness ranking and ranking. Now, with regard to the comments that you made. He says you're the one who's changing the definition of ranking based on the data. Absolutely not, Your Honor, because if you look at page 6 of our reply brief, right in the middle, we make very clear that they're portraying our argument as meaning that it's only two classes, whether it's suitable or not suitable is incorrect. We said not so. The point is that the proper construction of the ranking terms include the possibility of assignment to two classes, such as suitable and not suitable. That is one implementation of this aspect of the invention, but there are other implementations with any number of possible ranking classes. So that is our position. That's our position in the trial court. That's our position in the blue brief, in the gray brief, and in this court today. Now, with regard to what you and Judge Moore were discussing about the continuing debate over a way to do claim construction, if you think that this case would be better served with testimony, send it back. Absolutely you won't get a disagreement with us. But I'm here to tell you that in the four quarters of the patent, you can get exactly what you need for claim construction here. He says the same thing, but wants a different result. Of course he wants a different result. And just like he says I'm paid to do something, so is he. But I'm trying to actually work with the document. And I'll tell you that our construction, as in my dialogue with Judge Moore earlier on, we give comparing and ranking independent meaning. They don't. We preserve independent meaning for Claims 1 and Claim 2. They don't. Our definition also is true to the definition of fitness ranking in Claim 2. Theirs is not. Respond, though, to what I thought was a pretty insightful point by Judge Moore, in that often claims have the same meaning. They're describing, after all, one invention. By definition, you must claim one invention when they... Sure. And so if you're claiming one invention, why can't, as she points out, the fitness and the rank and the suitability be synonymous? It is within the realm of metaphysical possibility that that can happen in a particular patent. But it didn't happen in this patent. And this Court has made very clear that the law is that claim differentiation creates a presumption. And the legal Farshad case that we cite says it's the stroke. Actually, looking at Phelps, we took a lot of time on this issue in Phelps, and you'll see that we didn't make it an absolute rule. Claim differentiation was classified more as a guideline, and it was a guideline that has more relevance in the context of a dependent claim than elsewhere. And that is exactly the point of the law. But it's guidelines and not... I don't think I'm saying anything inconsistent with Phelps. When I quote back to you the language of this Court's cases, it's saying that it is a presumption. It's not a rule. It's not a conclusion. What about your use of the word ranking in discussing this very claim of grand prosecution history? I didn't give you an opportunity to respond to that when you wrote last time. I know. You do. First of all, let me apologize. I had the same problem that you did when I looked at the briefs, and that even the parts of the prosecution history that are, of course, in the record, that were cited by the district judge, were somehow or another not cited by appendix H, and as a result did not make their way into the white volume. They are in the record. I certainly rejoin Mr. Watkins. He'd like to see the entirety of the prosecution history that was presented. That said, the language of the prosecution history that I'm referring to just more is... Let's start with the one that he puts on his chart that he gave you, which is on page two here. The method signatures are ranked based on which corresponding methods are better suited. All that is saying that that certainly is likely to be in order. That's the one that's most compelling. Right. In order suitability. That's not on his chart. It's not in the appendix. Sure. And the language, Your Honor, of order of suitability is perfectly consistent with the sort of pass-fail rankings that we say are included. Now if you... Ranking of the method signatures in order of suitability for handling input parameters. Yes. So ranking them in order of their suitability. Yes, you could have one class wherein the result of the comparing step is a pass on the rankings. And in order, a second level, a second order is not suitable or less suitable. That is exactly what we say. I'd like to offer the following observation about the district court's claim construction as well. I don't know the prosecution history. Enlighten me. This statement was made in, I assume, a response to an office action. I believe that to be correct. This is so important. You can't even just give me, you know, the page of the prosecution history that actually has the quote. You've got to let me see what it is that the examiner rejected you for so I can look and find out what that prior art is and look at it and then say, you know, what was your response so I can see what you're trying to distinguish yourself away from. Right. We appreciate the criticism and we'll supply it. In fact, since we were responsible for providing the appendix, we'll supply it to the panel shortly after this argument. Tell me, though. You're about to write the legendary. Well, I've got the page in front of me here and it's discussing an NEC record. And I'll be happy to read it into the record for you right now, but I don't know if that's a worthwhile use of the court's time. Because the NEC, what I'm getting at is the NEC records do what you're suggesting this claim should be broadly construed as doing, which is making a suitable or unsuitable determination in both comparing the ranks. I will say, I will read to you exactly what it says. That's the best, most helpful I can be as I stand here today, which is NEC discusses the size-related ranking of member structures within objects held in an object-oriented database management system as part of the indexing of objects within the database. It does not discuss the ranking of a set of method signatures. It does not discuss the ranking of a set of method signatures as a function of comparison. I think that's enough to tell you that what the applicant was doing here in distinguishing over NEC was to say, gee, there isn't this comparison and ranking going on at the same time or in tandem with one another. And if you'd like me to go on with that language, as noted above, no comparison of acceptable parameters in a method in a persistent object to input parameters from a calling array-based environment is performed in Tanton et al., another reference which is discussed in tandem with the NEC reference. The ranking discussed in NEC is not the equivalent of the ranking of a set of method signatures performed as part of a function of the comparison. Again, that's the point about it's not being done as a function of the comparison. Our meeting, of course, that we're offering here is perfectly consistent with that. Mr. Castanis, I'm afraid your time is up. I know that. Your Honor, do you have a final thought? As I said before, our construction is true to everything within the patent. It gives the pairing and ranking of the defense meeting. It gives Claim 1 and Claim 2 independent meeting. And it's true to the specification and the prosecution history. And that's why the judgment should be reversed. Thank you, Your Honor. All rise. The honor court is adjourned.